Torbe, Receiver, Respondent, vs. Strauss and another, imp., Appellants.

*November 1, 1913—February 3, 1914.*

*Partnership: Contract: Construction: Liability for unpaid capital: Receivers: Actions, by: Parties: Party to contract and real party in interest: Disposition of assets after receivership: Appeal: Questions considered.*

1. A partnership agreement between W. and S. recited that W. had invested $6,700 and S. was to contribute $3,300, and provided that S. should have the option to pay the $3,300 in cash or to secure improvements to be made by some other person for the benefit of the partnership, which should count as so much paid toward his contribution to the capital. *Held* that, to entitle S. to credit for improvements made by a third person upon his procurement or request, they must be paid for by him or furnished without charge to the firm.

2. Improvements procured by S. to be made by a brewing company to the value of $2,000, for which the firm gave a promissory note, pursuant to a contract with the brewing company whereby the firm agreed to buy of it 100 barrels of beer per year for a stated time, and the brewing company agreed, upon that condition being performed, to credit the firm with $220 a year on such note, did not entitle S. to a credit of $2,000 toward his contribution to the capital.

3. An action to recover an unpaid balance of the amount to be contributed by S. to the capital was properly brought in the name of a receiver appointed in an action to dissolve the partnership and for an accounting and settlement of the partnership affairs.

4. Where one S. agreed to go into partnership with W. in a certain business and to contribute a stated amount to the capital, but, when the articles were being drawn up, stated that for business reasons he preferred not to sign them, and procured his brother to sign the same in his place, judgment properly went against both brothers in an action by a receiver to recover the unpaid capital, S. being bound as the real party in interest and his brother as a party to the contract of copartnership.

5. In an action by a receiver to recover capital stock which one partner had agreed but failed to put into the firm—consolidated with an action to dissolve the partnership and settle its business,—upon an appeal by said partner from a judgment against him the questions as to what amounts should be al-

lowed to the receiver and to his attorney, and what should be done with any balance remaining after settlement of the partnership affairs and the expenses of the receivership, are not properly before the supreme court, but should be determined in the court below in the adjustment of the receiver's account. It may be observed, however, that the balance, if any, which remains after all partnership matters are settled and all partners have contributed their portion of the capital stock should be divided between the partners in the proportion of the interest of each in the net assets of the firm.

APPEAL from a judgment of the circuit court for Milwaukee county: OSCAR M. FRITZ, Circuit Judge. *Affirmed.*

An action was brought by F. J. Wildes to dissolve the partnership known as the Juneau Hotel Company under articles signed by himself and one *Oscar A. Strauss.* The complaint in addition to dissolution and accounting demanded the appointment of a receiver and a receiver was appointed. Action was afterwards brought by the receiver to recover capital stock which *Strauss* had agreed to put into the firm, but which he had failed to do, and to settle the partnership business. *William Strauss* and Fred Miller Brewing Company were made parties to this action. The prayer of the complaint demanded an accounting between the defendant F. J. Wildes and *Oscar A. Strauss* and judgment in favor of the plaintiff, and that the defendant Fred Miller Brewing Company be enjoined from prosecuting a suit then pending in Massachusetts regarding the partnership matters, and for other relief.

The defendants *Oscar A. Strauss* and *William Strauss* answered separately. The defendants F. J. Wildes, Lydia H. Wildes, and Fred Miller Brewing Company also answered. The two actions were consolidated and were referred to Hon. G. W. Hazelton, sole referee to hear, try, and determine. The following are the findings of fact and conclusions of law made by the referee:

"That the defendant F. J. Wildes, on or about the 1st day of May, 1908, took possession of the building known as the

Juneau Flats, located on Wisconsin street, in the city of Milwaukee, under a ten-year lease from E. Mariner and the estate of William Mariner, deceased, conducting therein the business of leasing rooms and suites of rooms to individuals and families and maintaining a restaurant for the general public. That during the first year of his occupancy, ending May 1, 1909, said Wildes expended considerable sums of money in furnishing and fitting up the premises for the business he had taken in hand as indicated above, such expenditures aggregating $6,700, as appears from the evidence.

"That during the latter part of said first year of Wildes's occupation of said premises, the said Wildes conceived the idea of changing to some extent the business of the place by converting it into a hotel, with a bar in the basement for the sale of beer and distilled spirits, and of making such other changes as pertain to a hotel. That he made such purpose known by communication in writing to various brewing companies in the city of Milwaukee, and as a result thereof the city agents of several of the different breweries in Milwaukee, to whom such communications had been addressed, called on said Wildes and consulted with him in relation to the said scheme, which involved the expenditure of about $2,000. That among the city agents so calling on said Wildes was the defendant *William Strauss*, who then represented the Fred Miller Brewing Company of Milwaukee, one of the defendants herein; that the said Wildes and the said *Strauss* conferred and consulted together as to the terms upon which the said Brewing Company would be willing to advance the money to cover the expense of fitting up the place, and the said *Strauss* reported to the Fred Miller Brewing Company the result of his negotiations with said Wildes, and made an appointment for said Wildes to consult with some of the officers of the said Brewing Company; that thereafter the said Wildes had such conference, and as a result thereof an agreement was entered into on the 22d day of April, A. D. 1909, by which the said Fred Miller Brewing Company were to advance the sum of $2,000 for the purpose of making certain improvements within the premises leased by said Wildes for the purpose of a bar connection with said hotel, and which terms included the exclusive right to furnish the beer to be retailed at the said bar during the life of the said lease and the delivery of a note to the said

Brewing Company for $2,000, the cost of such improvements, with a satisfactory indorser or surety; that these terms were accepted by said Wildes and the contract was reduced to writing and executed on the 22d day of April, 1909, as hereinbefore stated, and Lydia H. Wildes, the mother of said F. J. Wildes, signed the said note as surety for her said son in compliance with the terms of the said contract and the demands of the said Fred Miller Brewing Company.

"That during the negotiations which resulted in the contract mentioned in the preceding finding of fact, it was disclosed that the said *William Strauss* was inclined to take an interest in the business to be inaugurated and conducted in the said building so as aforesaid leased by said Wildes, and the terms of a partnership were discussed and agreed upon between said F. J. Wildes and said *William Strauss*. The money already invested in fitting and furnishing the premises by said Wildes was considered, and agreed upon at $6,700, and it was arranged and agreed that *Strauss* would put into the new concern as capital stock $3,300 and should have one third of the profits arising from said copartnership and the said Wildes should have two thirds of said profits, and in addition thereto a salary of $100 per month for managing the business, together with a suite of five rooms for the use of himself and his family in the hotel in said premises.

"That when the time approached for drawing up the requisite articles of copartnership, the said *William Strauss* proposed that his brother *Oscar A. Strauss* take his place in the partnership, indicating that the Fred Miller Brewing Company might not approve his going into the concern while acting as its city agent; that said Wildes assented to this proposition, and said copartnership articles were drawn pursuant to that understanding, and duly executed by said F. J. Wildes and *Oscar A. Strauss*.

"That in and by the articles of copartnership which were executed and delivered on the 1st day of May, A. D. 1909, the said *Oscar A. Strauss* was to put $3,300 into the capital stock of the partnership as against $6,700 credited to the said Wildes; and in fact neither the said *Oscar A. Strauss*, nor his brother *William Strauss* for him, complied with said requirement; that only $1,300, part of said $3,300, was advanced or paid into said capital stock; that the said *Oscar A.*

*Strauss* reserved the option to pay the other $2,000 in money or pay the same by securing the payment to the said Fred Miller Brewing Company of the money advanced by said Brewing Company for fitting up the same premises for hotel and bar purposes, which amount was estimated at $2,000, but that in fact the said *Oscar A. Strauss* never exercised said option to assume such indebtedness, and never paid over the same in money nor any part thereof, nor did any one pay the same nor any part thereof for him, and the same now remains wholly and entirely unpaid.

"That thereafter on June 11, A. D. 1910, the said F. J. Wildes duly filed a petition in bankruptcy in the clerk's office of the United States district court for the Eastern district of Wisconsin and was adjudicated a bankrupt; that thereafter such proceedings were duly had that a trustee was appointed who sold at public sale all the right, title, and interest of said Wildes in and to the assets of the Juneau Hotel Company, the copartnership theretofore existing between the said defendants *Strauss* and the said Wildes, to one E. Murphy, who thereafter, for a valuable consideration, transferred the same to the defendant F. J. Wildes, who is now the legal owner and holder thereof.

"That the defendant Fred Miller Brewing Company is the legal owner and holder of the note heretofore mentioned and described herein given by the defendant Wildes and indorsed by his mother, Lydia H. Wildes, to the Fred Miller Brewing Company, and that the amount of said note, less the amount of credits thereon, leaves the principal thereof as $1,707.54. But from what was said on the trial by counsel and what is fairly deducible from the evidence before me, I think the defendant Lydia H. Wildes should have the opportunity to decide whether or not she wishes to interpose any defense to the said note.

"That the defendant *William Strauss,* acting for the said copartnership, entered into an agreement with one Max Freudenfeld to sell to him the assets of the said Juneau Hotel Company and take in payment therefor the sum of $3,000 in cash and the personal property belonging to said Freudenfeld at the Lucerne Hotel on West Water street in the city of Milwaukee, which said *Strauss* estimated to be worth $3,000, and that said agreement was duly consummated. That it developed upon the trial that the claim of the C. W.

Fisher Furniture Company for upwards of $2,000 and which remained unpaid had been arranged for by the assumption of the payment by said Freudenfeld of the same to the amount of $1,410 out of the said $3,000 in cash, the remainder thereof, $1,590, having been paid on the Mariner judgment for rent, and that it appeared in evidence at the trial that the Juneau Hotel Company, said copartnership, had, in consideration of the foregoing assumption of payment by said Freudenfeld of $1,410, been fully and completely discharged from any liability to said Furniture Company by reason of its claim of upwards of $2,000. That the remaining indebtedness of said copartnership was adjusted and paid by the said *William Strauss.*

### Conclusions of law.

"That the defendants said *Oscar A. Strauss* and *William Strauss* are jointly and severally indebted to the receiver in the said sum of $2,000, the amount found to be remaining unpaid on the said copartnership agreement that *Oscar A. Strauss* should pay $3,300 into the copartnership fund.

"That the agreement and sale of the property of the said copartnership by *William Strauss,* as set forth in the eighth finding of fact and as ratified by said Wildes, constituted a full and complete settlement of any balance which was or might be due from one of said parties to the other by reason of anything growing out of such agreement and sale and the disposition of the proceeds thereof, and the claim of the receiver against *William Strauss* for any balance claimed to remain in his hands from such property so received or the proceeds of the sale thereof is disallowed.

"That the defendant Fred Miller Brewing Company is entitled to judgment against the defendant Lydia H. Wildes upon the note given to said Fred Miller Brewing Company as set forth in the findings of fact herein for the present value of said note, but that the said defendant Lydia H. Wildes should have an opportunity to decide whether she wishes to interpose a defense to said note, and if she desire to question the amount due thereon or to resist the payment of the same she must, within ten days from the filing of this report, serve written notice on the attorney for the Fred Miller Brewing Company to that effect, and thereupon and within five days said attorney shall serve on her attorney a

complaint upon the said note, and such attorney for Lydia H. Wildes shall within five days thereafter serve the answer to said complaint on the attorney for the said Brewing Company, and the issue thus joined shall stand for trial in the proper court. That the injunctional order heretofore granted herein against the said Fred Miller Brewing Company be vacated and set aside at the expiration of ten days from and after the filing of this report.

"That the receiver herein is entitled to judgment against the defendants *Oscar A. Strauss* and *William Strauss* for the said sum of $2,000 with interest thereon from the date of the commencement of this action, with costs and disbursements herein to be taxed.

"That judgment be entered accordingly."

Motions were made by the parties to the suit on the report of the referee and heard, and the court confirmed the report and ordered judgment for the plaintiff. The part of the judgment involved in the present appeal is as follows:

"Adjudged: That the plaintiff recover from the defendants *Oscar A. Strauss* and *William Strauss* the sum of two thousand dollars ($2,000) principal, together with the sum of two hundred seventy-seven and 28-100 dollars ($277.28) costs and disbursements taxed, with interest on $2,000 at six per cent. from September 27, 1911, amounting in the whole to two thousand two hundred seventy-seven and 28-100 dollars ($2,277.28)."

*William E. Burke,* for the appellants.
*C. H. Hamilton,* for the respondent.
The following opinion was filed November 18, 1913:

KERWIN, J. The findings set out in the statement of facts give a sufficient history of the case. The main question is whether *William Strauss* and *Oscar A. Strauss,* or either of them, was liable for the $2,000 advanced by the Fred Miller Brewing Company. This question turns upon the construction of the contract, namely, whether the $2,000 was to be furnished by *Strauss* as capital stock. By the terms of the partnership agreement F. J. Wildes put in

$6,700 and *Strauss* was to put in $3,300.   He put in $1,300 in cash, the balance, $2,000, he was to put in by way of improvements, and such part of the balance, if any, not put in by way of improvements was to · be furnished in cash. Wildes was to have a two-thirds and *Strauss* a one-third interest in the business, each furnishing capital stock in that proportion.   The improvements, amounting to $2,000, were put in by the defendant Fred Miller Brewing Company and were never paid for by either *William Strauss* or *Oscar A. Strauss;* so the only money put into the business as capital stock by *William Strauss* or *Oscar A. Strauss* was $1,300.

The findings are well supported by the evidence, and the question is whether *Strauss* was to put into the firm the balance, $2,000, or whether the making of the improvements by the Fred Miller Brewing Company at the request of *Strauss* was a compliance with the partnership agreement.

The material parts of the partnership contract are the following:

"Second.   To that end and purpose the said Fred J. Wildes has contributed sixty-seven hundred dollars ($6,700) in investment already made by him, consisting of furniture, equipment, and everything and all property of every kind and description now located at said building.   Said *Oscar A. Strauss* is to contribute thirty-three hundred dollars ($3,300) in all, such money to be paid in as follows: Said *Oscar A. Strauss* to have the option to pay in thirty-three hundred dollars ($3,300) in cash and secure the investment of two thousand dollars or any portion thereof by any other person or persons, such amount to be expended in improvements on the first floor or first floor and basement.   Any amount of improvements which said *Oscar A. Strauss* secures from any person or persons for the benefit of this partnership to constitute a part payment of the thirty-three hundred dollars ($3,300) to be contributed by said *Oscar A. Strauss.*   Should such improvements not be secured by said *Oscar A. Strauss,* then he is to pay the entire sum of thirty-three hundred dollars and invest the same in the partnership. If improvements for less than two thousand dollars ($2,000),

are secured from other persons by *Oscar A. Strauss,* said *Oscar A. Strauss* is then to invest enough money to make up the difference between the amount put in in improvements by other persons for said partnership and the total sum of thirty-three hundred dollars.

"The respective interests of said partners in said partnership business to be: said Fred J. Wildes is the owner of two thirds thereof and said *Oscar A. Strauss* the owner of one third.    After all expenses are paid, net profits are to be shared, two thirds to said Fred J. Wildes and one third to said *Oscar A. Strauss.*    Any net loss that occurs is to be borne in the same proportion, two thirds by said Fred J. Wildes and one third by said *Oscar A. Strauss.*"

We think it clear from the foregoing contract that *Strauss* was to contribute $3,300 as capital stock, and it is established that he contributed only $1,300.    The contention of the learned counsel for appellants is that *Strauss* was to have credit for $2,000 on his capital stock when he got the Miller Brewing Company to put in $2,000 in improvements under the contract with the Fred Miller Brewing Company, which provided that the Brewing Company would advance $2,000 to make the necessary repairs and improvements in the partnership premises and deliver all beer required by the partnership, and complied with the terms of the agreement.    By virtue of this contract with the Miller Brewing Company the partnership agreed to buy 100 barrels of beer per year for a stated time and the Brewing Company agreed to credit each year $220 on the contract, if the partnership bought 100 barrels per year and performed its contract.    Of course, whatever value there was in this contract with the Brewing Company, *Strauss* as a member of the partnership got the benefit of it.    That was doubtless what *William Strauss* meant when he testified respecting the contract with the Brewing Company.    He said:

"That was really what lured me to come in as a partner, that $2,000 which the Brewing Company spent.    I was to get the benefit of that, whatever profits were derived from

it, and was figured as part of my interest, I having a one-third interest on a basis of $10,000, and Wildes having a two-thirds interest, and in accordance to that I had the papers drawn up by Mr. Frank Boden, the attorney."

Mr. Boden's memorandum made from statement of the parties as to terms of partnership was produced on the trial in connection with the testimony of Mr. Boden. This memorandum recites:

"Wildes has invested $6,700. *Strauss* is to bring in $3,300 in money and property.— Improvements are to be made in the first floor, including principally the café, the bar room and hotel lobby, and basement barber shop. And any improvements which said *Strauss* secures from any person to be made for the hotel on any consideration shall be credited to him as an investment in the partnership the same as though he had paid in a like amount of money, and *Strauss* to pay in as much cash as shall equal the difference between the amount of improvements he secures for the company and $3,300. The partners then to own two-thirds in Wildes and one-third in *Strauss.* . . . The money or improvements brought in by *Strauss* to the extent of $3,300 to be used in improvements to the first floor and the barber shop in the basement at once."

The contract of partnership, in connection with the other evidence, shows clearly that *Strauss* was to pay in the balance, $2,000, in money or secure a like amount in improvements on the partnership property. To secure the improvements clearly meant that he was to pay for them or procure them without charge or burden to Wildes.

Some point is made by counsel for appellants to the effect that, even if *Strauss* is liable for the $2,000, he is not liable to the receiver. This position cannot be sustained. The action was properly brought by the receiver to recover unpaid capital stock. It is further contended that the judgment should not have gone against *William Strauss.* We think the referee and court below were right in awarding judgment against both *Oscar A. Strauss* and *William*

*Strauss. William Strauss* was the real party in interest, but for certain business reasons preferred not to sign the articles of copartnership, and got *Oscar A. Strauss* to sign and act in his place, so *William Strauss* was bound as the real party in interest and *Oscar* was bound because a party to the contract of copartnership.

It is also urged that the judgment does not dispose of all the issues in the case. All the issues were before the court and full opportunity afforded to litigate them, and we think all the issues were fully considered and disposed of both by the referee and the court.

It would serve no useful purpose to extend this opinion by going over the issues litigated for the purpose of showing that all matters embraced within the pleadings were disposed of. We think the judgment below is right and that no prejudicial error was committed.

*By the Court.*—The judgment is affirmed.

The appellants moved for a rehearing; and the following opinion was filed February 3, 1914:

KERWIN, J. Counsel for appellants insists upon this motion for rehearing, as he did on the original argument, that all the issues were not disposed of by the trial court. We held on the original hearing that all the issues properly before the court below were considered and disposed of by that court, and we see no reason for receding from that conclusion. The questions which counsel suggests for determination upon this motion were not before the court below, were never passed upon by that court, and are proper questions to be considered and determined in the settlement of the receiver's account and the distribution of the balance, if any, which may remain after adjusting all partnership matters and expense of the receivership. Counsel asks us to determine the following:

(a) "What shall be allowed the receiver?"

(b) "What shall be allowed the receiver's attorney?"

(c) "What shall be done with the balance?"

These are matters to be settled by the court below in the adjustment of the receiver's account, and are not before this court upon this appeal.

It may be well, however, for the information of counsel, that something be said as to the disposition of any part of the assets of the firm which may remain after all partnership matters are settled, as counsel seems to think that advice on that point may prevent further litigation.

On this point, under (c), it may be observed that the balance, if any, which remains after all partnership matters are settled and all partners have contributed their portion of the capital stock should be divided between the partners in the proportion of the interest of each in the net assets of the firm.

*By the Court.*—The motion for rehearing is denied, with $10 costs.